Nathan B. Sobml, J.
This case was tried without a jury. The crime charged is a violation of section 1141 of the Penal Law. The publication involved is the April, 1957 issue of the magazine Gent. My verdict in this case will determine the disposition of several other indictments involving this and other magazines.
With respect to “ magazines ”, the statute punishes (1) printing; (2) publishing; (3) possession with intent to distribute or sell; (4) distributing, and (5) selling any £ 1 obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting” magazines..
*770 The District Attorney indicted the distributing corporation and one of its officers and the publishing corporation and one of its officers. (It is of no significance in view of my decision on the main issue, that the publishing corporation and its officer were indicted for aiding and abetting in the distribution of the magazine instead of for the publication thereof.)
The main issue presented in the trial is whether the magazine is obscene.
Our statute unlike the statutes in many States (see People v. Wepplo, 78 Cal. App. 2d 959) does not make specific intent an element of the offense. But like the Federal obscenity statute (U. S. Code, tit. 18, § 1461) which prohibits “knowingly” mailing etc., our statute by construction requires proof that the publisher, printer, distributor or seller know that the publication is obscene. There is insufficient proof in this case to establish that the individual officers of the publishing or distributing corporation knew the contents of the magazine.
We have for our guidance two recent decisions of the United States Supreme Court. Alberts v. California and Roth v. United States were decided together (354 U. S. 476). In the Roth case, the primary constitutional question, the court said, was whether the Federal obscenity statute violated the freedom of speech or freedom of press provisions of the First Amendment of the United States Constitution. In the Alberts case, the court said, the primary constitutional question was whether the obscenity provisions of the California Penal Code invaded the freedom of speech and press as incorporated in the liberty protected from State action by the due process clause of the Fourteenth Amendment.
In considering these decisions we must keep in mind that the publications involved were determined to be obscene. The majority opinion proceeded with that assumption. It said:
11 The dispositive question is whether obscenity is utterance within the area of protected speech and press ” (p. 481).
* * *
1 ‘ All ideas having even the slightest redeeming social importance — unorthodox ideas,.controversial ideas, even ideas hateful to the prevailing climate of opinion — have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance ” (p. 484).
*771 “ We hold that obscenity is not within the area of constitutionally protected speech or press ” (p. 485).
Thus if the publication is found to be obscene it is not protected by State or Federal constitutional provisions. If it is found not to be obscene, it is so protected.
The language of the statute (Penal Law, § 1141) in addition to “ obscene ” uses the descriptive adjectives “ lewd ”, “ lascivious ”, “ filthy ”, “ indecent ”, “ disgusting ”, etc. Although in their broadest meaning these statutory words might signify offensive .to propriety, refinement or good taste, it is clear that these words are used as synonyms for “obscene”. It is doubtful that any standard other than obscenity could stand the constitutional test. I conclude that all these adjectives as used in the Penal Law are synonymous with ‘ ‘ obscene ’ ’.
The test of obscenity as laid down by the court in Roth is: “Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest” (p. 489; italics mine).
It should first be noted that any standard of obscenity which allows material to be judged by the effect upon particularly susceptible persons such as the very young, does not meet the constitutional test of obscenity. The majority in Roth (p. 489) held that a test based upon the effect ‘ ‘ upon the most susceptible •¡persons * * * must be rejected as unconstitutionally restrictive of freedoms of speech and press.” The test is the ¡effect upon the ‘ ‘ average ’ ’ person.
The court in Roth (p. 489) also held that “ the dominant -¡theme of the material taken as a whole ” must be considered rather than “ isolated excerpts ”. True, the Supreme Court in both .cases was considering a book rather than a magazine. Our ¡statute is broad enough to proscribe an obscene article in a •magazine. However, the District Attorney in the present case ¡conceded that the charges were based upon the magazine as •a whole.
It should also be noted that it is by “ contemporary community standards ’ ’ that the material must be judged. The fundamental reason that “ obscene ” is not susceptible of exact definition is that such intangible moral concepts as it purports to connote vary in meaning from one period to another. (See Cardozo, Paradoxes of Legal Science [1928], p. 37.) Under the “contemporary community standard” test, time and place and geography necessarily enter into the definition. The trier of the facts must consider prevailing public opinion at the place of trial.
*772 And finally, the material to be obscene must “ appeal to prurient interest ’ i.e., material having a tendency to excite lustful thoughts. Webster’s New International Dictionary (1949) defines “ prurient ” in pertinent part, as follows: “ Itching ; longing; uneasy with desire or longing; of persons, having itching, morbid or lascivious longings; of desire, curiosity, or propensity, lewd ’ ’. The court approved the definition of “obscenity” in the Model Penal Code (§ 207.10, subd. [2], [Tent. Draft No. 6, 1957]), viz.: “ A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor or representation of such matters.” (But see, also, comment and discussion, p. 29 et seq.)
I need not hold that under Both sex and sex alone may appeal to prurient interests. But the indictment in question does concern itself with sexual appeal in stories, pictures and cartoons contained in the magazine.
Concerning sexual appeal, the court in Both said (p. 487): ‘ ‘ However, sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest. The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press.”
It is my judgment that only the sexual impure, i.e., smut or pornography can be punished under the statute. Such publication is without redeeming social importance and obscene by contemporaneous community standards.
Smut and pornography I define as any writing whose dominant purpose is a calculated and effective incitement to sexual desire. That must be its purpose and its actual effect. If its purpose is to reflect life including sex with reasonable accuracy and balance it is not obscenity. The author may not be required to put refined language in the mouths of coarse or vulgar people. The language used must be considered in relation to the characters, setting and theme of the story. To hold otherwise would prevent the realistic portrayal in literature of sex, a great and mysterous force in human life which has been of absorbing interest to mankind throughout the ages.
Judged by these standards I find that the April, 1957 issue of Gent is not obscene in its art or in its stories.
Incidental issues I decide as follows: (1) Knowledge of the obscene contents of the writing or art must be proved. (2) Book *773 reviews may be received in evidence. (3) Evidence of expert witnesses is proper. (4) Comparison of the material with other similar material previously adjudicated is proper.
The verdict is not guilty.